IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| BRIAN KOPEIKIN, M.D., | CV 13–45–BU–DLC |
| Plaintiff, | |
| vs. | ORDER |
| MOONLIGHT BASIN MANAGEMENT, LLC, D/B/A MOONLIGHT BASIN RESORT, | |
| Defendant. | |

Before the Court is Defendant Moonlight Basin Management, LLC's ("Moonlight") Rule 12(b)(6) motion to dismiss.  Moonlight contends Plaintiff Brian Kopeikin's claim must be dismissed because the complaint alleges an injury resulting from "the inherent dangers and risks of skiing," as defined in Montana Code Annotated § 23-2-702, for which Moonlight cannot be held liable.  See Mont. Code Ann. § 23-2-736(4).  The Court has jurisdiction pursuant to 28 U.S.C. 1332(a)(1).  For the reasons explained below, the motion to dismiss will be denied.

## I.    FACTUAL BACKGROUND

The foregoing summary of facts is derived from the allegations in Kopeikin's complaint, which must be treated as true for purposes of resolving

Moonlight's motion to dismiss.

On February 5, 2012, Plaintiff Brian Kopeikin, M.D., ("Kopeikin") a resident of California, was snow skiing at Moonlight Basin ski resort in Madison County, Montana.  Skiing conditions that day were excellent.  The snow was powder, the skies were clear, the wind was calm, and the temperature was between zero and thirty-two degrees Fahrenheit.  Kopeikin is a very experienced skier. After lunch, Kopeikin and a friend boarded the Six Shooter chairlift at the Madison Village Base Area.  Kopeikin and his friend then began skiing an intermediate run called "Fast Lane," which accessed "Upper Elkhorn," a slightly more difficult run.  While skiing Upper Elkhorn, Kopeikin suddenly encountered a series of unmarked and unnatural hazards that allegedly resulted from negligent acts and omissions on the part of  Moonlight.

Traversing Upper Elkhorn was an unnamed and unmarked "cat track" that was  cut into the mountain or groomed by Moonlight in such a manner that it "slope[d] downward in the uphill direction."  (Doc. 1 at 3.)  The cat track was lined on both sides with boulders that Moonlight had placed there to delineate its path.  Because of its configuration and position on the slope, the cat track prevented Kopeikin from seeing the terrain or potential hazards immediately downhill of the cat track, which allegedly was a boulder field "comprised of large,

craggy, and sharp rocks." *Id.*, at 4.  This boulder field stretched downhill from the cat track for approximately fifty feet.  Like the cat track, this hazard was allegedly "unnatural" and existed because of the acts and omissions of Moonlight.  The boulder field was "created by the construction and/or grading of the cat track." *Id.* In addition, some of the boulders that had been placed on the cat track to delineate its path had tumbled down and come to rest in the boulder field.   The unnatural boulder field occupied an approximately fifty foot swath of Upper Elkhorn.  No warning of any kind of any of these hazards was present.

Kopeikin was skiing well under control and at a medium speed.  As he "crossed the cat track, he saw for the first time, and with no time or opportunity to take evasive action, the boulder field in the 'Upper Elkhorn' run immediately below the cat track." *Id.*   He tucked his shoulder and rolled in order to avoid head injury.  He then "landed on his back in the rocks" sustaining serious injuries. *Id.*

## II.        LEGAL STANDARD

"A rule 12(b)(6) motion tests the legal sufficiency of a claim.  A claim may be dismissed only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957).  In assessing a motion to dismiss, the Court will "accept the plaintiffs'

allegations as true and construe them in the light most favorable to plaintiffs."

*New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th

Cir. 2011)(quoting *Gomper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal,* 129 S.Ct. 1937, 1949 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.*

### III.        ANALYSIS

### A.    Montana statutes and the parties' contentions

Moonlight contends that the facts as alleged simply cannot support a claim

because Montana law provides that a skier "shall accept all legal responsibility for

injury or damage of any kind to the extent that the injury or damage results from

inherent dangers and risks of skiing."  Mont. Code Ann. § 23-2-736(4).  It

contends that even accepting as true the facts alleged in the Complaint, Kopeikin's

injury clearly resulted from the "inherent dangers and risks of skiing" as that term

is defined in Montana Code Annotated § 23-2-702(2).

-4-

In pertinent part, Montana Code Annotated § 23-2-702(2) provides:

> (2) 'Inherent dangers and risks of skiing' means those dangers or conditions that are part of the sport of skiing, including:
>
> . . .
>
> (d) collisions with natural surface or subsurface conditions, such as bare spots, forest growth, rocks, stumps, streambeds, cliffs, trees, and other natural objects;
>
> (e) collisions with lift towers, signs, posts, fences, enclosures, hydrants, water pipes, or other artificial structures and their components;
>
> (f) variations in steepness or terrain, whether natural or the result of slope design, snowmaking, or snow grooming operations, including but not limited to roads, freestyle terrain, ski jumps, catwalks, and other terrain modifications;
>
> . . .
>
> (i) the failure of a skier to ski within that skier's ability;

Moonlight contends that one or all of these provisions are applicable and mandate dismissal of Kopeikin's claims. The Court finds that, at this stage at least, subparts (d), (e), and (i) are inapplicable for the reasons explained below.[1]

First, Kopeikin's Complaint consistently alleges that the hazards he encountered were unnatural conditions. The cat track "was not a naturally

---

[1] In its reply brief, Moonlight, for the first time, also presents arguments that Kopeikin's claims are barred as a result of § 23-2-736(1) and -736(2)(a). The Court will not address these arguments because they were not raised in Moonlight's initial motion. See e.g., *State of Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990). Furthermore, application of these statutes raise obvious questions of fact about causation and comparative negligence and so are not appropriate with respect to Moonlight's motion to dismiss.

occurring or natural condition on the mountain." (Doc. 1 at 3.) Likewise, the boulder field "appears to have been created by the construction and/or grading of the cat track." As such, even if the rocks Kopeikin collided with are natural objects, the Complaint alleges that the boulder field was not a "natural surface or subsurface condition" as required for subpart (d) to apply. Thus, at this stage, subpart (d) is inapplicable. Likewise, even though the Complaint alleges that the boulder field was not a "natural . . . condition," it also cannot be regarded as an "artificial structure" as contemplated by the statute in subpart (e). Under subpart (e), collisions with "lift towers, signs, posts, fences, enclosures, hydrants, water pipes, and other artificial structures" are inherent dangers and risks of skiing. The vague term "other artificial structures," however, is to be interpreted by reference to the specific items in the list in which it appears: *ejusdem generis*. Clearly then the term "other artificial structures" should not encompass a boulder field resulting from the construction of a cat track. Subpart (e) is therefore inapplicable. Finally, subpart (i) is inapplicable because the Complaint specifically alleges that Kopeikin was a very experienced skier who was skiing "well under control at a medium speed." *Id.*

Whether subpart (f) bars Kopeikin's claim requires a more thorough analysis. Under subpart (f), "variations in steepness or terrain, whether natural or

the result of slope design, snowmaking, or snow grooming operations, including but not limited to roads . . . catwalks, and other terrain modifications" are inherent dangers and risks of skiing.[2]  Thus, a skier must "accept all legal responsibilty for injury or damage of any kind" resulting from variations in steepness or terrain. Mont. Code Ann. § 23-2-736(4).

Moonlight insists the analysis here is simple.  It contends that the Court should simply look to the list provided by the statute, determine whether the Complaint alleges injury resulting from one of the items contained in the list, and if it does, dismiss the Complaint.  In other words, because this case involves a catwalk, which is specifically listed in subpart (f), the case must be dismissed. This argument has simplistic appeal, but the Court is not persuaded that such an analysis is appropriate in light of Montana case law interpreting Montana's skier responsibility statutes and state and federal court decisions applying similar statutes that have been enacted in other states.  Furthermore, this issues is presented pursuant to a motion to dismiss, as opposed to a motion for summary judgment filed following a fully developed record.

---

[2]  The Complaint refers to a "cat track" while the statute refers to a "catwalk."  The Court regards these terms as synonymous.

### B.    Montana case law

In this diversity action the Court must apply Montana substantive law. *Erie R. Co. v. Tomkins*, 304 U.S. 64, 79 (1938). Kopeikin thus directs the Court to two Montana cases addressing previous versions of Montana statutes that defined the duties of ski area operators and skiers and the "inherent dangers and risks of skiing": *Brewer v. Ski-Lift, Inc.*, 762 P.2d 226 (Mont. 1988) and *Mead v. M.S.B., Inc.*, 872 P.2d 782 (Mont. 1994).

In *Brewer*, the plaintiff brought suit after sustaining injuries when his ski came off and he intentionally fell to stop himself to retrieve his ski. When he fell, he impacted an upside down tree stump hidden beneath the snow that he alleged had been "removed from its natural position in the course of ski hill maintenance and placed in a dangerous location." *Brewer*, 762 P.2d at 227. He contended that proper maintenance would have eliminated the hazard. *Id.* Montana law at that time, however, barred recovery from a ski area operator if the skier suffered an injury resulting "from participating in the sport of skiing." *Id.*, 762 P.2d at 229(quoting Mont Code Ann. § 23-2-736(1)(1979)(held unconstitutional in *Brewer*, 762 P.2d at 231)). The statute also barred a skier's recovery for "collisions with a person or object while skiing." *Id.*, 762 P.2d at 229-230(quoting Mont. Code Ann. § 23-2-736(2)(1979)(held unconstitutional in *Brewer*, 762 P.2d

at 231)).   In addition, the statute made Montana's ordinary comparative negligence principles inapplicable for injuries resulting from "risks inherent in the sport of skiing." *Id.*, 762 P.2d at 230(quoting Mont. Code Ann. § 23-2-737(1979)(held unconstitutional in *Brewer*, 762 P.2d at 231)).   Applying these statutes, the district court granted summary judgment to the ski area operator.

The Montana Supreme Court reversed.  The Court concluded that "a fair reading of the . . . statutes prohibits the skier from obtaining legal recourse against an operator even if the injury is proximately caused by the negligent or even intentional actions of the operator." *Brewer*, 762 P.2d at 230.  Applying an equal protection analysis, the Court held that no rational relationship existed between protecting the economic vitality of the ski industry and "requiring skiers assume all risks for injuries regardless of cause." *Id.*  The Court concluded the statute was over broad and unconstitutional. *Id.*

The Montana legislature responded to *Brewer* by amending the skier responsibility laws.  The legislature repealed § 23-2-733 (1979), which had eliminated comparative negligence in the context of ski injury cases.  The legislature also refined the definition of "risks inherent in the sport of skiing." The amended version deleted the broad language that barred a skier's recovery for "collisions with a person or object while skiing."  It also deleted the broad

language making a skier responsible for all injuries resulting "from participating in the sport of skiing." The legislature also added a new provision which set forth a list of duties a ski area operator owes a skier. The statute provided that these duties must be carried out "[c]onsistent with the duty of reasonable care owed by a ski area operator to a skier." *Id.* § 23-2-733 (1989).

The Montana Supreme Court addressed this amended version of Montana's skier responsibility statutes in *Mead*. In *Mead*, the plaintiff brought suit against a ski area operator after suffering injury resulting from his collision with a rock outcropping that apparently protruded at the edge of a ski run as the run rounded a curve. Though nonspecific about which provisions applied, the district court granted summary judgment in favor of the ski area operator, concluding that Montana's skier responsibility statutes were enacted to prevent such claims. The district court found that the rock outcropping was a naturally occurring condition for which the ski area operator could not be held liable.

The Montana Supreme Court reversed on two grounds. First, the Court held that under the 1989 version of § 23-2-733, a ski area operator's duties were not limited to those listed in the statute but included any duties "consistent with the duty of reasonable care." *Mead*, 872 P.2d at 788 (quoting Mont. Code Ann. 23-2-733 (1989)). The Court held that a contrary construction of the statute would

contradict the statute's plain language and render the statute unconstitutional because the ski area operator "would be immune from liability for its negligent or intentional acts." *Id.* Second, the Court held that questions of fact existed as to whether the plaintiff's injury resulted from an inherent risk of skiing under § 23-2-736(b). The Court held that the plaintiff's injury did not result from a "variation in ski terrain," because the rock outcropping was not part of the "skiing terrain."[3] *Id.*, 872 P.2d at 789. The Court further held that the record failed to resolve whether the plaintiff's injuries were caused by "bare spots . . . caused by limited snowfall, melting, wind, erosion or skier action" because "there was no indication in the record whether the rocky outcropping would normally be covered with snow at that location." *Id.* (quoting Mont. Code Ann. 23-2-736(b) (1989)).

The legislature has amended Montana's skier responsibility statutes twice since *Mead*. In general, however, the operative provisions of the statutes remain largely unchanged.

Importantly, § 23-2-733 still provides a non-exclusive list of duties for ski area operators. As underscored in *Mead*, these duties are to be performed "[c]onsistent with the duty of reasonable care owed by a ski area operator to a

---

[3] In reaching this conclusion, the Court found it significant that the plaintiff's "skis never did come into contact with the rocky outcrop" and that at the time of the injury the plaintiff had "left the trail." *Mead*, 8872 P.2d at 789.

skier."  Mont. Code Ann. § 23-2-733.

Second, while the definition of "risks inherent in the sport of skiing" has been modified, the changes are generally minimal and do not affect the Court's analysis here.  For instance, what was earlier referred to as "risks inherent in the sport of skiing" has been amended so that the current version refers slightly more broadly to "inherent dangers and risks of skiing."  Mont. Code Ann. § 23-2-702(2).  Also, under the current version, "inherent dangers and risks" need not be "integral" to the sport of skiing, but only "part of the sport of skiing."  *Id.* Additionally, the word "ski" no longer modifies "terrain" in the phrase "variations in steepness or terrain."[4]  *Id.*, § 23-2-702(2)(f).  These changes make no difference here because the Court concludes, particularly regarding the last modification, that the cat track and boulder field on the Upper Elkhorn run are clearly part of the "ski terrain."

Regardless, some of Kopeikin's contentions can be resolved by applying the plain language of the statute.  For instance, Kopeikin's insistence that inherent risks include only "a list of natural conditions over which a ski-area operator has no control," is clearly mistaken.  (Doc. 7 at 2.)  The current definition of inherent

---

[4]  This amendment appears designed to avoid a repeat of the analysis in *Mead* which found that a feature within the boundaries of the ski area was not "ski terrain."

dangers and risks of skiing includes a variety of "unnatural" and potentially

hazardous conditions that appear on ski mountains, including roads, cat walks, ski

jumps, and "other terrain modifications."  Mont. Code Ann. § 23-2-702(2)(f).  The

current definition also includes collisions with lift towers, signs, posts, fences,

water pipes, and "other artificial structures."  *Id.* § 23-2-702(e).  Thus, it does not

follow that because the cat track and boulder field were "man-made" (Doc. 7 at 2),

the conditions are per se beyond the scope of the statutory definition of "inherent

dangers and risks of skiing."

Also, notwithstanding the changes to Montana's skier responsibility

statutes, the principles announced in *Mead* and *Brewer* remain binding to the

extent that the cases are applicable.  The Court finds, however, that *Mead* and

*Brewer* involved different factual situations and different legal contentions and

therefore do not fully resolve the issues before the Court.  Finally, the Court

rejects Kopeikin's contention that *Mead* stands for the proposition that all hazards

on a ski mountain present questions of fact not suitable for summary disposition.

In some cases summary judgment will be appropriate.  *See Kumar v. Copper*

*Mountain, Inc.*, 431 Fed. Appx. 736 (10th Cir. 2011)(applying similar Colorado

skier responsibility statutes and granting summary judgment to the ski resort for a

claim brought by a plaintiff who suffered injuries resulting from a fall off an

unmarked natural cornice)(unpublished).

### C.    Case law from other jurisdictions

Though not directed to do so by the parties' briefing, the Court has looked for guidance to decisions from courts outside of Montana where similar skier responsibility statutes have been addressed.  Utah and North Dakota have similar statutory schemes and courts in those states have thoroughly considered the issues presented by these statutes. See *Bouchard v. Johnson*, 555 N.W.2d 81 (N.D. 1996); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037 (Utah 1991); *White v. Deseelhorst*, 879 P.2d 1371 (Utah 1994); see also *Wright v. Mt. Mansfield Lift, Inc.*, 96 F.Supp 786 (D.Vt. 1951).

The *Clover* and *Wright* decisions are particularly helpful.  *Wright* analyzes the principles that apply to ski area cases in general and *Clover* analyzes these principles in the context of a statutory scheme similar to Montana's.

*Wright* is an early case addressing a ski area operator's liability for a skier's injury prior to the enactment of any skier responsibility statutes.  In *Wright*, the plaintiff was injured when her ski struck a stump that was hidden beneath the surface of the snow.  The tree had been cut down and the stump protruded 4-5 inches from the ground.  *Wright*, 96 F.Supp. at 790.  It was completely hidden from view by the snow and located on a designated ski trail marked

"intermediate." *Id.*, 96 F.Supp at 789-790.  The ski area operator took it upon itself to assess each ski trail throughout the day and to close certain trails that it deemed overly-hazardous or unfit for skiing.  *Id.*, 96 F.Supp at 788-789.  The particular trail on which the plaintiff was injured was not one that had been closed, nor marked with any warning signs.  *Id.*

The court granted a directed verdict in favor of the ski area operator.  *Id.*, 96 F.Supp. at 792.  In reaching this decision, the court first described the duties of the skier: to exercise good judgment and to ski within one's abilities.  *Id.*, 96 F.Supp. at 790.  It also described the risks a skier necessarily assumes as a result of encountering rapidly changing conditions and the possibility for unexpected hazards.  *Id.*, 96 F.Supp. at 790-791.  The court likened the activity to other similar inherently dangerous activities: ice skating, ocean swimming, and bobsledding.  *Id.*, 96 F.Supp. at 791.  Ultimately, the court held that the ski area operator had no duty to eliminate the hazard at issue:

> The plaintiff, in hitting the snow-covered stump as she claims to have hit, was merely accepting a danger that inheres in the sport of skiing. To hold that the terrain of a ski trail down a mighty mountain, with fluctuation in weather and snow conditions that constantly change its appearance and slipperiness, should be kept level and smooth, free from holes or depressions, equally safe for the adult or the child, would be to demand the impossible. It cannot be that there is any duty imposed on the owner and

> operator of a ski slope that charges it with the knowledge
> of these mutations of nature and requires it to warn the
> public against such.

*Id.*, 96 F. Supp. at 791.  Fundamentally, *Wright* provides a description of the

context in which the duties of a ski area operator arise.  Moreover, while this 1951

case speaks of "mutations of nature," it deals specifically with a stump on a

designated ski trail resulting from ski trail maintenance, and rejects the contention

that a dangerous sport on a "mighty mountain" can be made "level and smooth"

and "equally safe for the adult or the child."  *Id.*

    *Clover* is a more recent case addressing a ski area operator's liability for a

skier's injury in the context of Utah's skier responsibility statutes.  In *Clover*, the

plaintiff was injured in a collision with another skier.  *Clover*, 808 P.2d at 1039.

The plaintiff was skiing on a run in the landing zone of a ski jump.  *Id.*  Another

skier, Zulliger, took the jump and collided with the plaintiff.  *Id.*  When taking the

jump, he could not see whether the landing zone was clear of other skiers until he

was airborne.  *Id.*  The ski jump was well-known to the ski area operator.  *Id.*  Ski

patrol often instructed people not to take the jump and there was a sign instructing

skiers to ski slowly at this point in the run.  *Id.*  Zulliger ignored the sign and took

the jump at a significant speed.  *Id.*

    Utah's skier responsibility statute provided that a ski area operator was

immune from suit for injuries resulting from the "inherent risks of skiing." *Id.*,
808 P.2d 1044.  The statute defined "inherent risks of skiing" as "those dangers or
conditions which are an integral part of skiing."  *Id.*  The definition specifically
included "collisions with other skiers" among the inherent risks of skiing.  *Id.*  The
Court, however, rejected the ski resort's contention that *all* collisions between
skiers were to be considered inherent risks of skiing.  *Id.*  It held that this
interpretation of the statute "would result in a wide range of absurd consequences"
wherein, despite a ski area operator's conduct, the only relevant inquiry in
assessing liability would be "whether, in [a] fall, the skier collide[ed] with a
danger listed" in the statute.  *Id.*, 808 P.2d at 1045.  The Court held that such an
analysis would be "entirely arbitrary."  *Id.*

The Court separated the kinds of risks and hazards that a skier encounters
into three categories.  The first category were "risks, such as steep grades, powder,
and mogul runs, which skiers wish to confront as an essential characteristic of
skiing."  *Id.*, 808 P.2d at 1047.  The Court held that the ski area operator was
under no duty to eliminate these types of risks.  *Id.*  The second category of risks
outlined were "those hazards which no one wishes to confront but cannot be
alleviated by the use of reasonable care on the part of a ski resort."  *Id.*  These
include those that arise due to the fact that "[w]eather and snow conditions can

suddenly change and, without warning, create new hazards where no hazard previously existed." *Id.*  The Court held that the ski area operator had no duty to eliminate these hazards either and that the only duty a ski area operator has with respect to these dangers was to warn of them in a general way as part of the sport of skiing. *Id.*  In the final category, the Court described a subset of the second category of hazards, being those which no skier wishes to confront but which are "unnecessary hazards" that a ski area operator has a duty to eliminate or alleviate through the exercise of ordinary care. *Id.*  The Court held that "a blind jump with a landing area located at a point where skiers enter the [intermediate] run" was an unnecessary hazard and that *questions of fact remained* with respect to the ski resort's breach of its duty to eliminate or alleviate it.  *Id.*

One further case, that deals specifically with hazards associated with cat tracks, bears discussion.  In *White v. Deseelhorst*, 879 P.2d 1371 (Utah 1994), the plaintiff brought suit after suffering injury from an allegedly ill-designed and unmarked cat track.  The plaintiff was skiing down a run labeled "most difficult" when he suddenly encountered a cat track that because of its location on the mountain allegedly fell into his blind spot. *Id.*, 879 P.2d at 1373.  The plaintiff became airborne as he skied over the cat track and landed on his head. *Id.*

The Court applied the *Clover* framework and held that "the unmarked cat

-18-

track on the blind side of a ridge" was the type of risks that a skier would not wish to confront. *Id.*, 879 P.2d at 1375. It further held that on the record before it questions of fact existed as to whether the ski resort exercised reasonable care in eliminating or alleviating the hazard. *Id.* With regard to cat tracks, the Court provided the following pertinent description:

> It is undisputed that cat tracks are a common and necessary feature at ski resorts. They allow novice skiers an easier route down the mountain and provide access to upper portions of the mountain for grooming machines and other maintenance equipment. Because cat tracks are so pervasive and important to the sport, it is unlikely that ski resorts could alleviate all of the possible harms that may result from them. Thus, in most cases they would constitute an inherent risk of skiing.

*Id.*

### D.     Application to Moonlight's Motion to Dismiss

In light of the case law described above, and Montana's statutory scheme, the Court adopts the following framework in resolving Moonlight's motion to dismiss. First, Montana's skier responsibility statutes do not immunize ski area operators from their own negligence. The statute provides a non-exclusive list of duties which a ski area operator must perform and instructs that these are to be performed "[c]onsistent with the duty of reasonable care owed by a ski area operator to a skier." Mont. Code Ann. 23-2-733(1). *Mead* underscores this point.

-19-

*Mead*, 872 P.2d at 788.

Second, Montana's statutory definition of "inherent dangers and risks of skiing" must be read in conjunction with the ski area operator's statutory duty of reasonable care. A mechanical application of the statute focused solely on the object with which the plaintiff collided would produce results that are "entirely arbitrary," *Clover*, 808 P.2d at 1045, and undermine *Brewer*'s holding that a ski area operator is not immune from liability for its own negligence. *Brewer*, 762 P.2d at 230. The statutes should be read in a manner that avoids constitutional violations and gives meaning to all of its provisions. See *Mead*, 872 P.2d at 788; *Wild v. Fregein Construction*, 68 P.3d 855, 860 (Mont. 2003).

Third, the duty of reasonable care required of a ski area operator must be viewed in the unique context of skiing. Montana Code Annotated §§ 23-2-702(2) and 23-2-736(1)-(2) make this clear. Skiing presents a multitude of dangers and hazards. Notwithstanding an operator's efforts to tame it, skiing takes place on essentially wild terrain, on "a mighty mountain, with fluctuation in weather and snow conditions that constantly change." *Wright*, 96 F.Supp at 791. Furthermore, skiing is a sport engaged in by thrill-seeking experts and novices alike. It is both impossible and undesirable for a ski area operator to eliminate all of the hazards associated with the sport of skiing. In many cases, a ski area operator eliminates

-20-

natural hazards associated with the sport of skiing at the risk of compromising the sport's appeal to a large percentage of skiers who embrace the thrill and challenge associated with more challenging conditions.  Fundamentally, skiing demands that a skier exercise appropriate caution and good judgment or else be responsible for the consequences.  Furthermore, some hazards inherent in the sport of skiing, like cat tracks, exist as a necessary result of accommodating and managing the infrastructure required to run a ski resort and to move skiers from one part of the mountain to another.  Thus, not all inherent risks of skiing are those resulting from "natural" conditions.  In addition, to remain economically viable, courts cannot hold ski area operators to the same safety standards generally demanded of owners of simpler business premises.  Ski areas encompass vast and unwieldy terrain and mother nature is always at play; thus a ski area operator cannot be expected to expend all of its resources making every hazard or potential hazard safe, assuming that such an end is even possible.  To do so would be both prohibitively expensive and compromise the appeal of skiing.

Finally, the Montana legislature requires the courts to exercise restraint when assessing that which, as a matter of law, constitutes reasonable care on the part of the ski area operator, mindful of the economic impact on ski areas of lengthy and expensive litigation.  Indeed, it is the stated purpose of the Montana

skier responsibility statutes to maintain the economic viability of the ski industry "by discouraging claims based on damages resulting from the inherent dangers and risks of skiing."  Mont. Code Ann. § 23-2-731.

Applying these principles to the case at hand, the Court denies Moonlight's motion to dismiss.  At this very early stage of the proceeding, all facts alleged must be treated as true and construed in the light most favorable to the plaintiff. *New Mexico State Inv. Council*, 641 F.3d at 1094.  According to the allegations in the Complaint, which is all the Court has before it at this time, the hazard which Kopeikin encountered was of a type that no skier wishes to confront: an unmarked, arguably ill-designed, and boulder-lined cat track that hid from view a fifty-foot boulder field in the middle of a groomed run.  Moreover, Kopeikin alleges that the hazards presented by the cat track and the boulder field were unnecessary and could have been eliminated or alleviated through the exercise of ordinary care. Montana law provides that Moonlight owes Kopeikin a duty of reasonable care. Mont. Code Ann. § 23-2-733(1).  The statutory definition of "inherent dangers and risks of skiing" must be read in conjunction with this duty of reasonable care in order to avoid constitutional infirmities, *Brewer*, 762 P.2d 226, and absurd results. See *Clover*, 808 P.2d at 1045.  In this motion to dismiss, Moonlight presents no facts to contradict Kopeikin's allegations that Moonlight's failure to warn,

negligence in constructing the cat track, and negligence in maintaining the cat track and boulder field caused Kopeikin's injuries.  Thus, notwithstanding the statutory definition of "inherent dangers and risks of skiing," Kopeikin's claim survives Moonlight's motion to dismiss.

IT IS ORDERED that Moonlight's motion (Doc. 4) is DENIED.

Dated this 7th day of November 2013.

Dana L. Christensen, Chief District Judge
United States District Court

-23-