IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| BRIAN KOPEIKIN, M.D., <br><br> Plaintiff, <br><br> vs. <br><br> MOONLIGHT BASIN MANAGEMENT, LLC, D/B/A MOONLIGHT BASIN RESORT, <br><br> Defendant. | CV 13–45–BU–DLC <br><br><br> ORDER |

Before the Court is Defendant's Motion for Summary Judgment. For the reasons explained, the Court grants the motion.

## Synopsis

Plaintiff Dr. Brian Kopeikin ("Kopeikin") was injured in a skiing accident in Montana. Kopeikin is a resident of California. He brought this diversity action against Defendant Montana ski area operator Moonlight Basin Management, LLC ("Moonlight") asserting a claim for negligence sounding in premises liability and a claim for negligent hiring, training, supervision and management.

Earlier in the litigation, Moonlight moved to dismiss the Complaint asserting that it failed to state a claim under Montana's skier responsibility statute,

1

Montana Code Annotated § 23-2-736, because even as alleged all of Kopeikin's injuries resulted from the inherent dangers and risks of skiing. The Court denied the motion.

Now before the Court is Moonlight's motion for summary judgment, and a fully-developed record in which several of Kopeikin's key allegations from the Complaint are conclusively rebutted. On this updated evidentiary record, the Court concludes that Moonlight acted consistent with its duty of reasonable care and that all of Kopeikin's injuries resulted from the inherent dangers and risks of skiing. Accordingly, Moonlight is entitled to judgment as a matter of law and its motion for summary judgment is granted.

**Factual Background[1]**

On February 5, 2012, Kopeikin and his skiing partner, Sven Rose, purchased lift tickets to ski Moonlight Basin ski resort. Near the ticket booth

---

[1] Defendant filed its motion for summary judgment on June 23, 2014, and Kopeikin responded on July 25, 2014. In accordance with Local Rule 56.1(b), Kopeikin simultaneously filed a separate Statement of Disputed Facts with his brief in opposition to the motion for summary judgment. Then, on the afternoon of January 28, 2015, less than 24 hours prior to a hearing on the motion, Kopeikin filed a document styled as a "Supplement to Statement of Disputed Facts." (Doc. 41.) Kopeikin did not seek leave of Court to file the "Supplement," and the filing is not contemplated by Local Rules. Indeed, it is contrary to the Local Rule's requirement that a Statement of Disputed Facts be filed "simultaneously with" the brief in opposition. L.R. 56.1(b). The filing is untimely by at least six months, and Kopekin has not sought leave to file it. Accordingly, its contents are not considered for purposes of deciding this motion.

where Kopeikin purchased his ticket is a sign warning skiers of unmarked hazards. Kopeikin is a very experienced skier, having skied at several ski resorts throughout the Rocky Mountain West over the past 36 years, and he had seen similar signs at other ski resorts warning patrons of unmarked hazards. Kopeikin knew that the presence of rocks is common at ski areas in the Rocky Mountains, such as Moonlight, and he did not expect that all hazards at Moonlight would be marked.

Skiing conditions at Moonlight on February 5, 2012, were generally good, with clear skies, calm winds, and temperatures near thirty-two degrees. However, it was a low snow coverage year, and Kopeikin acknowledges that prior to his accident he saw uncovered rocks on the sides of the ski runs. Rocks are prevalent at Moonlight.

After skiing several easier warm-up runs, Kopeikin and Rose decided to take the Six Shooter chairlift up the mountain in an effort to access an area of more challenging, expert terrain known as Headwaters. Upon learning that hiking was required to access the terrain, and due to their concern about a lack of sufficient snow coverage, the two men decided not to ski Headwaters.

Instead, Kopeikin and Rose decided to ski a run called "Elkhorn." At the unloading area for the Six Shooter chairlift there is a sign identifying Elkhorn as a

3

black diamond, or "most difficult," run. (Doc. 21-9; 30-7.) To access Elkhorn, Kopeikin and Rose began by skiing on an intermediate run called "Fast Lane." On Fast Lane, there were plainly visible rocks above the snow surface that Kopeikin admits that he likely saw.

The two then approached the entrance to Elkhorn. Immediately before the entrance to Elkhorn, there is a sign indicating, again, that Elkhorn is designated a black diamond, or "most difficult," run. (Doc. 21-13.) Kopeikin and Rose skied past this sign and onto Elkhorn. At this point, the terrain steepened and narrowed, and the ski run was occupied by obstacles such as moguls and snowdrifts.[2] As Kopeikin began skiing down Elkhorn, plainly visible grass and rocks could be seen poking through the snow on the side of the run.

Approximately 200 yards below the entrance of Elkhorn, there is an area where a cat track, or its remains, crosses Elkhorn. In 2007, after determining the cat track was not being used regularly, Moonlight removed the edges of the cat track where it crossed Elkhorn in an attempt to return the slope to its natural condition. The cat track, or what remains of it, partially obscures the terrain immediately below it.

---

[2] A snowdrift, or wind drift, is defined as "a heap of snow piled up by the wind." *Webster's New World Dictionary* (4th Ed., Wiley Publishing 2002). In his deposition, Kopeikin referred to the snowdrifts as "drift lumps." (Doc. 25-4 at 93.)

Rose skied in front of Kopeikin and successfully navigated the cat track and the terrain immediately below it. Kopeikin estimates that he was skiing behind Rose at approximately 10 to 15 miles per hour. Kopeikin "came over the cat track and absorbed it[] and when [his] skis touched down both hit rocks," and he was ejected from his skis. (Doc. 25-4 at 120.) He fell forward and landed in other rocks that were either visible or buried under the snow. As a result of his fall, Kopeikin suffered serious and disabling injuries that necessitated extensive medical care and treatment.

Kopeikin testified that he "would not have fallen because of the cat track," *id.* at 124:1-2, but fell because his "skis hit rocks." *Id.* at 124:2-3. The particular rock that caused him to be ejected from his ski was one that he could not see because it was under the snow and was "something you had to penetrate and hit with a little force." *Id.* at 146:14-15.

From 2003, when Moonlight opened, through the end of the 2012 ski season, Moonlight had approximately 700,000 skier visits. Other than Kopeikin's accident, there have been no other reported accidents due to rocks in the location of the subject accident.[3]

---

[3] Kopeikin disputes whether any other accidents had been reported at the location of his accident, but he presents no contrary evidence. In an effort to show that the fact is disputed, Kopeikin cites to the Court three incident reports involving skiing or snowboarding accidents on

## Legal Standard

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The "mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252.

## Discussion

In this diversity action, the Court applies Montana substantive law. *Erie*

---

the Elkhorn run generally. These include: (1) a 2013 accident that occurred somewhere on Elkhorn in which a woman with "no vision on one side" bumped into her daughter on her blind side and fell, (Doc. 25-11 at 3); (2) a 2011 accident in which a snowboarder "was going down of [sic] the second hill of elkhorn [and] rolled forward," (Doc. 25-9 at 2-3.); and (3) a 2008 accident that occurred on the "left side on skiers L of Lower Elkhorn" in which a snowboarder "caught [his] edge on ice [and] fell forward," (Doc. 25-10 at 2-3). None of these accident appear to have occurred at the location of Kopeikin's accident, and all of them are, in any case, of such dissimilar nature as to be immaterial to the Court's analysis.

*R.Co. v. Tomkins*, 304 U.S. 64, 79 (1938).

Pursuant to Montana statute, "[a] skier shall accept all legal responsibility for injury or damage of any kind to the extent that the injury or damage results from inherent dangers and risks of skiing." Mont. Code Ann. § 23-2-736(4). The "inherent dangers and risks of skiing" are statutorily defined as "those dangers or conditions that are part of the sport of skiing," including in pertinent part:

> . . .
> (b) snow conditions as they exist or as they may change, . . .
> . . .
> (d) collisions with natural surface or subsurface conditions, such as bare spots, forest growth, rocks, stumps . . . and other natural objects;
> . . .
> (f) variations in steepness or terrain, whether natural or the result of slope design, snowmaking, or snow grooming operations, including but not limited to roads, freestyle terrain, ski jumps, catwalks,[4] and other terrain modifications.

*Id.* at § 702(2).

Under Montana statute, "[a] skier has the duty to ski at all times in a manner that avoids injury to the skier and others and to be aware of the inherent dangers and risks of skiing." *Id.* at § 736(1). Additionally, Montana statute requires a skier to "know the range of the skier's ability and safely ski within the limits of

---

[4] Consistent with its Order of November 7, 2013, the Court interprets the term "catwalk" to be synonymous with the term "cat track." No objection to this interpretation has been raised by the parties.

7

that ability . . . so as to negotiate any section of terrain or ski slope and trail safely and without injury or damage." *Id.* at 736(2)(a). A skier is also statutorily required to "know that the skier's ability may vary because of ski slope and trail changes caused by weather, grooming changes, or skier use." *Id.*

A ski area operator must act "consistent with the duty of reasonable care owed by a ski area operator to a skier." *Id.* at § 733. Montana's skier responsibility statutes cannot be read to immunize ski resorts from their own negligent or intentional acts, because such an interpretation would violate Montana's constitution. *Mead v. M.S.B., Inc.*, 872 P.2d 782, 788 (Mont. 1994). However, the stated purpose of Montana's skier responsibility statutes is to "discourage[] claims based on damages resulting from the inherent risks of skiing." Mont. Code Ann. § 23-2-731.

In ruling on Defendant's motion to dismiss, the Court articulated an interpretation of Montana's skier responsibility statutes that harmonizes the definition of the inherent dangers and risks of skiing with the requirement that a ski area operator act consistent with its duty of reasonable care. In so doing, the Court rejected the notion that a court's only role in ski area liability cases is to inquire whether the plaintiff's injuries resulted from a collision with a particular object appearing on the statutory list of inherent risks of skiing, because such an

8

application would produce absurd results and render the statute unconstitutional. *Kopeikin v. Moonlight Basin Management, LLC*, 981 F.Supp.2d 936, 945 (D. Mont. 2013). At the same time, not every case involving hazards on a ski mountain presents a genuine dispute of fact appropriate for trial, and summary judgment will sometimes be appropriate. *Id.* at 943.

Ultimately, Montana's skier responsibility statutes make clear that the duty of reasonable care owed by a ski area operator to a skier "must be viewed in the unique context of skiing." *Id.* at 945. Skiing is a sport in which thrill-seeking skiers embrace its inherent dangers and risks. It is a sport that occurs on "a mighty mountain, with fluctuation in weather and snow conditions that constantly change." *Wright v. Mt. Mansfield Lift, Inc.*, 96 F.Supp. 786, 791 (D. Vt. 1951). "[A] ski area operator cannot be expected to expend all of its resources making every hazard or potential hazard safe, assuming such an end is even possible," or desirable. *Kopeikin*, 981 F.Supp.2d at 946. "Ski areas encompass vast and unwieldy terrain and mother nature is always at play." *Id.* The act of skiing in such terrain presents an obvious array of dangers to a skier, many of which the ski area operator has no duty to protect against under Montana law. Fundamentally, a skier bears much of the responsibility for avoiding injury to himself, which is a principal that is consistent with Montana law.

In this case, Kopeikin's injuries resulted from the inherent dangers and risks of skiing. Without question, applying a plain language interpretation of Montana's skier responsibility statutes leads to this conclusion. In snow conditions as they existed on February 4, 2012, Kopeikin skied over a variation in terrain and collided with a subsurface rock that caused him to fall and collide with other surface or subsurface rocks. Thus, the accident falls clearly within the definition of the inherent dangers and risks that are part of the sport of skiing. Mont. Code Ann. § 23-2-701(2)(b)(d)&(f). Furthermore, Kopeikin failed to negotiate the terrain safely and without injury. Notwithstanding his years of experience and expertise, he failed to ski in manner that avoided injury to himself and to be aware of the inherent dangers and risks of skiing. *See id.* at § 23-2-736. Accordingly, so long as Moonlight acted consistent with its duty of reasonable care owed to Kopeikin, Kopeikin must accept all legal responsibility for his injuries. *Id.* at § 23-3-736(4).

It is clear that Moonlight acted consistent with its duty of reasonable care as a ski area operator with respect to Kopeikin. Moonlight warned generally of unmarked hazards. It posted multiple signs designating the run on which Kopeikin was injured a black diamond, or most difficult, run. With respect to the cat track, Moonlight had taken efforts to remove it and return the slope back to its

natural condition.

Kopeikin did not suddenly and blindly encounter an unmarked cat track. Rather, Kopeikin admits that what remained of the cat track could be clearly seen from above. Also, the rocks that Kopeikin collided with, like all of the rocks on the Elkhorn run, were naturally occurring. Without citation to any record evidence, Kopeikin asks the Court to infer that some of the rocks in the area where he fell unnaturally accumulated there through the process of removing the cat track back in 2007. The record evidence, however, establishes the opposite – the process of removing the cat track reduced the number of rocks in the area because many of the rocks were covered up during the cat track removal process.

Furthermore, with over 700,000 skier visits, there had never been another reported accident at the location of Kopeikin's accident caused by a collision with rocks. According to Kopeikin, the rock that he hit with his skis, which caused him to fall, was buried under the snow and "was something you had to penetrate and hit with a little force and then it was there." (Doc. 25-4 at 147.) Thus, Kopeikin's theory that Moonlight had a duty to warn of these specific rocks, is undermined by this specific accident's unforeseeability, despite the fact that accidents of this general nature were foreseeable to skiers that were skiing on the mountain in low snow conditions. To impose a duty on Moonlight to mark or remove all

11

submerged rocks, which are not readily visible, would be to require Moonlight to undertake an impossibility.

Kopeikin himself recognized that it was a low snow year. He had seen other rocks on other runs prior to skiing Elkhorn. He elected not to ski Headwaters in part because there was "no snow." (Doc. 25-4 at 90.) He rightly did not expect that all hazards on the mountain would be marked. On Elkhorn, rocks and grass were plainly visible. When he approached the area of Elkhorn where the remains of the cat track obscured the terrain immediately below, he did not stop and assess what was below.

It is clear that Montana's skier responsibility statutes apply to these facts, that Kopeikin encountered the inherent dangers and risks of skiing, and that he must therefore accept all legal responsibility for his injuries and damages. As was eloquently stated by Judge Gibson in granting a directed verdict for the defendant ski area operator against a claim by a plaintiff injured when her skis unexpectedly hit a tree stump buried under the snow:

> Skiing is a sport; a sport that entices thousands of people; a sport that requires an ability on the part of the skier to handle himself or herself under various circumstances of grade, boundary, mid-trail obstructions, corners and varied conditions of the snow. Secondly, it requires good judgment on the part of the skier and recognition of the existing circumstances and conditions. Only the skier knows his own ability to cope with a certain piece of trail. Snow, ranging from

> powder to ice, can be of infinite kinds. Breakable crust may be encountered where soft snow is expected. *Roots and rocks may be hidden under a thin cover.* A single thin stubble of cut brush can trip a skier in the middle of a turn. Sticky snow may follow a fast running surface without warning. Skiing conditions may change quickly. What was, a short time before, a perfect surface with a soft cover on all bumps may fairly rapidly become filled with ruts, worn spots and other manner of skier created hazards.

*Wright*, 96 F.Supp. at 790-91 (emphasis added).

The Montana Legislature has recognized these truths about skiing and codified them, so that a skier has a duty to ski safely and within his abilities, and accepts all responsibility for injuries resulting from the inherent dangers and risks of skiing. Because Kopeikin's injuries resulted only from the inherent dangers and risks of skiing and because Moonlight did not breach its duty of reasonable care, Moonlight is entitled to judgment as matter of law.

IT IS ORDERED that Moonlight's motion for summary judgment (Doc. 20) is GRANTED. IT IS FURTHER ORDERED that all other motions are DENIED AS MOOT. The clerk shall enter judgment in favor of Defendant and against Plaintiff. This case is CLOSED.

Dated this 9th day of February 2015.

_____
Dana L. Christensen, Chief District Judge
United States District Court